UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LOLA C. CHARETTE,            ) | |
|                              ) | |
|         Plaintiff,           ) | |
|                              ) | |
|    v.                        ) | |
|                              ) | Civil No. 05-20-B-W |
| MAINE SCHOOL ADMININSTRATIVE ) | |
| DISTRICT NO. 27, *et al.*,   ) | |
|                              ) | |
|         Defendants.          ) | |

**RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS COUNT I AND MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO AMEND**

Lola C. Charette contends that Sandra B. Bernstein, the Superintendent of Maine School Administrative District 27, terminated Ms. Charette's employment as a school nurse for the District after Ms. Charette facilitated two students in their efforts to access family planning services that culminated in their acquisition of a prescription for the so-called "morning after" birth control pill, without first advising the students' parents of the matter. Ms. Bernstein, who allegedly learned of the matter by coincidence, subsequently met with Ms. Charette and, according to Ms. Charette, terminated her employment in retaliation for Ms. Charette's exercise of her constitutional right to speak freely on a matter "of public concern, including the privacy and confidentiality protections afforded to her minor students, as well as her own legal and professional-ethical obligations to maintain the privacy and confidentiality of her patients." (Docket No. 1, ¶ 52.) In addition to her rights under the First Amendment, Ms. Charette alleges the following due process claim:

> The plaintiff's assistance and counseling of minor patients to obtain a pregnancy test and receive reproductive health care without parental consent was in furtherance of the minors' constitutional rights, including the right to use

>contraception, the right to an abortion, and the right of privacy about medical information all recognized under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In terminating Ms. Charette for acting in furtherance of her minor patients' constitutional rights, the defendants violated both Ms. Charette's individual free speech rights and her constitutional rights derived from her standing as a health care provider and counselor to assert the interest of her minor patients concerning their constitutional rights relating to reproductive health care.

(Id.) The District has filed a motion to dismiss in which it asks the court to dismiss the foregoing claim against it on the ground that, as a matter of law, the facts alleged cannot support a finding that Ms. Charette was terminated pursuant to an official policy or custom. (Mot. to Dismiss Count I, Docket No. 2, at 3-7.) In addition to opposing the motion to dismiss, Ms. Charette has moved to amend her complaint "out of an abundance of caution," although she also maintains that the original complaint "more than adequately" stated a viable claim against the District. (Pl.'s Obj., Docket No. 12, at 3 n.1; see also Mot. to Amend, Docket No. 11.) I now grant the motion to amend and recommend that the court deny the District's motion to dismiss.

## Material Allegations

To establish the District's liability for the alleged constitutional violations, Ms. Charette alleged in her original complaint that "Ms. Bernstein was the final decisionmaker for M.S.A.D. 27 concerning the decision to terminate the employment of Ms. Charette, and she had the final policymaking authority for M.S.A.D. 27 concerning such employment decisions." (Compl., Docket No. 1, ¶ 45.) In her proposed amended complaint, Ms. Charette supplements this allegation as follows:

>45A. On February 21, 2003, Ms. Bernstein told Ms. Charette that the Board of Directors for the M.S.A.D. 27 has the right to fire teachers but the superintendent has the right to fire other school personnel.
>
>45B. Ms. Bernstein placed an item on the agenda for the M.S.A.D. 27 Board of Directors on February 21, 2003 and told Ms. Charette that at the meeting Ms. Bernstein would be giving the Board members information about the reasons for

2

>Ms. Charette's termination from employment and that the meeting was only for her to give information to the Board.  Ms. Bernstein told Ms. Charette that there would be "no discussions, no decision to be made, no dialogue with the board members."
>
>45C.  After Ms. Charette requested to attend the February 21, 2003 meeting of M.S.A.D. 27's Board of Directors, Ms. Bernstein removed from the agenda for that meeting the issue of Ms. Charette's termination from employment, and did not provide any information whatsoever to M.S.A.D. 27's Board of Directors concerning Ms. Charette's termination from employment.  Ms. Bernstein later informed counsel for Ms. Charette that there would be no Board action concerning Ms. Charette's termination from employment.  The Board of Directors never took any action to review in any way Ms. Charette's termination from employment.
>
>45D.  Ms. Charette filed a grievance with Ms. Bernstein on or about February 14, 2003 concerning Ms. Charette's termination from employment.  Ms. Bernstein denied the grievance and informed Ms. Charette that she had did not even have the benefit of the grievance procedure.
>
>45E.  Ms. Charette was an employee at will when she was terminated by Ms. Bernstein in 2003.
>
>45F.  It was the custom and usage of M.S.A.D. 27 that Ms. Bernstein had final policymaking authority for M.S.A.D. 27 concerning decisions terminating the employment of employees at will and those employees were not entitled to the grievance procedure in the collective bargaining agreement between M.S.A.D. 27 and the Northern Aroostook Teachers Association.
>
>45G.  The Board of Directors for M.S.A.D. 27 delegated to Ms. Bernstein final policymaking authority for M.S.A.D. 27 concerning decisions terminating the employment of employees at will and those employees were not entitled to the grievance procedure in the collective bargaining agreement between M.S.A.D. 27 and the Northern Aroostook Teachers Association.

(First Mot. to Amend, Docket No. 11, Elec. Attach. 1, First Am. Compl, ¶¶ 45A-45G.)  The District has not replied to Ms. Charette's opposition to the motion to dismiss.  Nor has it opposed her motion to amend.

**Discussion**

A.   **Motion to Amend**

The scheduling order in this matter set May 4, 2005, as the deadline for amendment of pleadings. Ms. Charette filed her motion to amend on March 11, 2005, well ahead of the deadline, albeit after a responsive pleading was filed. Given the timeliness of the motion to amend, the liberality of the rule governing the amendment of pleadings, see Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires"), and the absence of any objection, I **GRANT** the motion to amend (Docket No. 11).

B.   **Motion to Dismiss**

The motion to dismiss raises the question of whether Ms. Bernstein's isolated act of terminating Ms. Charette's employment can be deemed to have occurred pursuant to a District custom or policy, a necessary prerequisite for Ms. Charette to subject the District to liability under 42 U.S.C. § 1983 for acts performed under color of state law by Ms. Bernstein, a District employee. See Silva v. Worden, 130 F.3d 26, 31 (1st Cir. 1997). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). According to the District, Maine law clearly holds that a superintendent of schools does not have the authority to establish employment policies for a school district and, therefore, a superintendent's isolated act of terminating an at-will employee based on novel circumstances can never rise to the level of a District custom or policy. (Mot. to Dismiss, Docket No. 2, at 5-6.)

In civil rights actions, as in the mine-run of other cases for which no statute or Federal Rule of Civil Procedure provides for different treatment, a court confronted with a motion to

4

dismiss pursuant to Rule 12(b)(6) "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  The District does not seriously contend that the solitary act of terminating a municipal employee under novel circumstances could never serve to establish a municipal policy or custom.  In Pembaur, the Supreme Court observed that a "single decision by municipal policymakers" may subject a municipality to liability "under appropriate circumstances" and that it does not always take a "properly constituted legislative body" to establish official policy.  475 U.S. at 480.  Thus:

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations.  If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood.  More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.

Id. at 481 (footnote omitted).  Instead, the District contends that, as a matter of state law, an employment decision by a superintendent of schools can never establish school district policy because a superintendent is only an administrator and Maine law vests policymaking authority in the school board.  ((Mot. to Dismiss, Docket No. 2, at 5-6, citing Craig v. Me. Sch. Admin. Dist. No. 5, 350 F. Supp. 2d 294, 296-97 (D. Me. 2004); 20-A M.R.S.A. §§ 1001(1-A) & 1055).)

In Craig, Judge Carter granted a similar motion to dismiss filed by a school administrative district against a civil rights claim brought by a terminated at-will school employee.  Craig, 350 F. Supp. 2d at 297.  However, Judge Carter noted that the plaintiff in that case had not alleged that the school district "specifically delegated its policymaking functions" to the superintendent therein.  Id. at 297 n.2; see also id. at 296 n.1 ("Although placed on notice of

5

potential deficiencies in his Complaint, Plaintiff has not elected to file an amended complaint pursuant to Fed. R. Civ. P. 15(a) addressing the issues of a municipal policy, either express or implicit, or that [the superintendent] was in fact delegated official policymaking authority.")  My conclusion is that Ms. Charette's claim against the District is saved from *brevis* dismissal based on the allegations set forth in paragraphs 45F and 45G of her amended complaint.  In those paragraphs Ms. Charette alleges that it is the District's custom and usage to place final policymaking authority in Superintendent Bernstein— its top administrator—and that it in fact delegated that authority to her insofar as the District's at-will employees are concerned.  If this allegation is true, then Superintendent Bernstein's acts could have served to establish current District policy *vis-à-vis* the particular circumstances of Ms. Charette's case because she would have served not merely as the final discretionary decisionmaker regarding Ms. Charette's employment, but also as the final policymaker.[1]

> [L]ike other governmental entities, municipalities often spread policymaking authority among various officers and official bodies.  As a result, particular officers may have authority to establish binding . . . policy respecting particular matters and to adjust that policy . . . in changing circumstances.  To hold a municipality liable for actions ordered by such officers exercising their policymaking authority is [not] an application of the theory of *respondeat superior*. . . . . [M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among

---

[1]  I am not suggesting that this is a question of fact for the jury; only that the legal question of whether the District delegated final policymaking authority to Superintendent Bernstein depends on the facts of the case and it appears that a set of facts consistent with Ms. Charette's allegations could conceivably exist to support such a finding.

> As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury. Reviewing the relevant legal materials, including state and local positive law, as well as 'custom or usage' having the force of law," St. Louis v. Praprotnik, 485 U.S. 112, 124 n.1 (1988) (plurality opinion), the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.

Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989).

>    various alternatives by the official or officials responsible for establishing final
>    policy with respect to the subject matter in question.

Id. at 483.  Because the amended complaint alleges a set of facts that could be proved and could justify the imposition of "municipal liability" on the District based on more than the common law doctrine of *respondeat superior*, I recommend that the Court **DENY** the District's motion to dismiss.

## Conclusion

For the reasons set forth above, I **GRANT** the plaintiff's motion to amend (Docket No. 11) and **RECOMMEND** that the court **DENY** the defendant school administrative district's motion to dismiss (Docket No. 2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated April 21, 2005